I,BYRNES, j.
Officer Paulette Owens was driving a New Orleans Police Department vehicle with Tanzie Washington riding as a passenger when it was struck in the rear by an automobile owned and operated by Erin Daste on November 29, 1994. The accident occurred on Louisiana Avenue at its intersection with Carondelet St. Owens and Washington filed suit against Daste and his automobile liability insurer, Allstate Insurance Company, alleging injury as a result of this accident.
Pursuant to a judge trial the trial court rendered judgment against Daste and Allstate in solido, awarding Tanzie Washington $8,349.00 and Paulette Owens $34,-530.00. Daste and Allstate suspensively appealed. We affirm.
There are no issues of law in this case, only issues of fact which we will review as we are constitutionally mandated to do in the context of the entire record, according to the manifestly erroneous/clearly wrong standard, with the exception of the question of general damages which is subject to the great and vast discretion of the fact finder.
On appeal Daste and Allstate do not challenge the finding of liability. The only assignment of error that they make is the contention that the amount of the Raward was excessive because there was evidence impeaching the plaintiffs and evidence demonstrating that the plaintiffs were not injured.
The $34,530.00 award to Paulette Owens consists of $30,000.00 in general damages and $4,530.00 in medical expenses. Defendants do not contend that Owens did not incur the medical expenses or that the expenses were unreasonable for the treatment received. Rather it is the contention of the defendants that Owens was not injured. Therefore, the defendants argue that Owens did not need any of the treatment she received such as physical therapy.
The defendants base their contention on the fact that Owens was neither cut nor bruised as a result of the accident. At trial Owens testified that as a result of the accident she experienced headaches, pain in the right leg, and lower back pain. By the time of trial Owens was no longer experiencing headaches and had very little right leg pain. But her lower back pain persisted. In the performance of her job she is unable to stand for long periods of time when she is in uniform. As a result she has been unable to perform detail work that required long periods of standing.
Owens was treated by Dr. Timothy P. Finney who practices with Southern Orthopedic Specialists in partnership with Drs. Williams, Habig, Moss, Millet and Hoffman. Dr. Finney testified that he first saw Owens on December 16, 1994, for low back pain and headaches which she related to the accident that is the subject of this suit. Upon examination Dr. Finney found objective manifestation of injury in the form of spasm in the lower lumbar spine muscles. Dr. Finney also testified that this was not a symptom that Owens could produce voluntarily, i.e., it was not a symptom she could feign or fake. Based on his examination he concluded that laOwens had lumbar spine strain. Dr. Fin-ney felt that such an injury was consistent with the automobile accident that is the subject of this suit. He prescribed an anti-inflammatory, Daypro, and a muscle relaxant, Soma. He also gave her a neck, shoulder, and back exercise program to perform at home. Dr. Finney saw Ms. Owens several times thereafter. On each such occasion he continued to note complaints of chronic lower back pain. Dr. Finney referred Ms. Owens to Davidson and Laruso for physical therapy. Upon examination in May of 1995 Dr. Finney continued to note objective signs of injury in the form of muscle spasm. At that time he also injected her with cortisone to help alleviate the muscle spasms. On June 26, 1995, Dr. Finney again noted muscle *3 spasms, and again gave her a cortisone injection in the lower back.
When he examined her on July 21, 1995, he noted slightly different symptoms, but felt that, “Sometimes patients compensate a little bit from an injury and they tend to strain or overuse other areas.”
On August 29,1995 he changed her anti-inflammatory to Dolabid. On her next visit in September, Dr. Finney had an MRI performed on Owens in order to rule out any disc problem. The MRI revealed no disc problem. She was still experiencing discomfort, however.
She was seen again in October of 1995. Dr. Finney noted that she continued to go to physical therapy intermittently. In January of 1996 he changed her anti-inflammatory to Oruval. As of the examination of March 29, 1996, Dr. Finney continued to note objective signs of injury in the form of muscle spasm. At the visit of June 14, 1996, Dr. Finney also noted “a little trochanteric bursitis” which he suggested was “probably more of an overuse or compensatory type | ¿thing.” Dr. Fin-ney continued to see Owens until February 12, 1997 during which time he continued to note spasm in the lumbar spine area. Dr. Finney testified that:
I have never had any doubt in any of her complaints to me and I never did feel that she was being untrue to me or gave me any facts that would lead me to not believe her.
Dr. Finney testified that he anticipated that Ms. Owens would continue to require treatment every few months for quite some time in the future. He also testified that although Ms. Owens may have strained her back on May 26, 1995 getting something out of the trunk of her car, that the complaints that she continued to relate to him arose out of her initial automobile injury.
In addition to receiving medical treatment from Dr. Finney, Owens went to Davidson and Laruso for physical therapy, and also received some chiropractic treatment. Her appointments have been somewhat erratic because of her work schedule. Dr. Finney prescribed muscle relaxants and pain killers. Twice Dr. Finney gave her injections in her back for pain. She experiences pain when she picks up her young child who was one year old at the time of the accident. The trial court awarded Owens damages for chronic back complaints, not head injuries.
Dr. Finney also treated Tanzie Washington. He first saw her on December 16, 1994, at which time she complained of lower back and neck pain as a result of the accident that is the subject of this suit. Dr. Finney noted no objective symptoms in connection with her neck pain, but he did note “spasm over the paraspinous muscle.” He diagnosed lumbar strain with spasm. He prescribed the anti-inflammatory Naprosyn, and a course of home physical therapy for her neck and a back stretching program. Dr. Finney treated Washington on several more|soccasions up to June 6, 1995, on which date he gave her a cortisone injection. On each such occasion he continued to note muscle spasm. When he examined her again on July 7, 1995, she reported some improvement and he noted no spasm. He discharged her at that time. Dr. Finney testified that he felt that Ms. Washington’s symptoms were genuine and that they were attributable to the automobile accident. On cross-examination Dr. Finney testified that the only time Washington mentioned neck pain to him was on the occasion of her first visit.
Defendants suggested that Washington’s pain was more likely the result of a filing cabinet falling on her at work shortly after the automobile accident. Although there is evidence in the record of such an incident, there is nothing from which it can be inferred that Washington’s encounter with the filing cabinet was the cause of her pain. For example, there is no evidence that Washington filed a workers’ compensation claim in connection with the falling cabinet.
*4 Officer Sunseri testified that when he arrived at the accident scene he noted that the vehicle driven by the defendant, Daste, had been damaged and that Ms. Owens’ vehicle had been pushed forward by the impact. Owens’ vehicle was on the other side of Carondelet at the time Officer Sun-seri arrived at the accident scene. The defendant, Daste, testified that the damage to the front bumper of the vehicle she was driving had been caused by her father several months prior to the accident. But Daste also testified that she slid forty or fifty feet after applying her brakes. From this the trial judge could reasonably infer that the impact was somewhat greater than the defendants would have this Court believe.
The defendants contend that the testimony of the plaintiffs is so inconsistent as to call their credibility into question and thereby render the findings of the trial | ficourt manifestly erroneous and cause the general damage awards to exceed the great and vast discretion that the fact finder has in such matters.
The defendants note that Owens testified that she saw the Daste vehicle prior to impact which is inconsistent with her statement that she was surprised by the impact. Whether Owens was surprised or not is irrelevant and immaterial. The trial judge could reasonably infer that she saw the Daste vehicle, but still hoped and expected it to stop in time to avoid the collision. We find no inconsistency in Owens’ testimony on this point.
The defendants contend that it was inconsistent for Owens to testify that she struck her head on the steering wheel while simultaneously testifying that she was wearing her seat belt and harness. In effect, the defendants contend that it would have been virtually impossible for Ms. Owens to have hit her head on the steering wheel had she been wearing her seatbelt and harness. There is no merit to this argument. A seatbelt and harness will not normally prevent the driver’s head from striking the steering wheel.
The defendants contend that Owens’ testimony that the impact knocked her vehicle across Carondelet St. is inconsistent with her testimony that she did not know how far her vehicle was pushed forward. It is clear from the record that Ms. Owens knew where her vehicle was prior to the impact and where it ended up as a result of the impact. In other words, she knew that her vehicle was pushed across Caron-delet St., but she didn’t know how many feet that was. There is nothing inconsistent in this testimony.
The defendants also suggest that the plaintiffs’ delay in seeking medical attention is inconsistent with their claim of injury. This is not the case. Stiffness |7and pain often do not manifest themselves immediately. The trial judge could reasonably infer that plaintiffs hoped to feel better in a few days without medical intervention. Neither plaintiff was in need of emergency medical care. The trial court could reasonably infer that only when plaintiffs realized that their discomfort was not going to fade away quickly that they sought medical attention.
The defendants complain that at the trial Washington testified that Owens’ vehicle was stopped at the time it was struck by the Daste vehicle, but at an earlier deposition Ms. Washington had testified that she could not remember whether the vehicle was stopped. Unless Ms. Washington memorized a script before testifying it is not expected that her testimony will be precisely identical on every point when taken on two different occasions separated by a significant lapse of time. This slight variation does not render her testimony so inconsistent as to be unworthy of belief in all respects. Moreover, the attorney for the defendants made sure that the trial judge was well aware of this “inconsistency” at the time of trial. The trial judge was able to weigh this into his credibility determinations and must have concluded, as does this Court, that when viewed in the context *5 of the record as a whole, it is not significant.
The defendants introduced the bio-mechanical report of their expert, Dr. Norman E. McSwain, Jr. in support of the proposition that in the absence of damage to the vehicle in which the plaintiffs were riding, they could not have been injured. As noted at the outset, Dr. McSwain neither interviewed nor examined either plaintiff, nor inspected either automobile. His report is singularly | sunpersuasive.[1] We cannot say that the trial judge was manifestly erroneous in preferring the testimony of the plaintiffs and their doctor to the report of Dr. McSwain.
In reviewing this case the standard is not whether there is any evidence at all to support the finding of the trial court, but whether after reviewing the record as a whole, as we are constitutionally required to do, we find that the finding of the trial court was reasonable, regardless of whether we perceive the existence of other ways to look at the evidence that are also reasonable, and which we might have preferred to adopt were this Court sitting as the trial court. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94); 639 So.2d 216, 221. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where the fact-finder’s finding is based on the decision to credit the testimony of one of two witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id., at p. 845.
Moreover, we have been reminded only recently by the Supreme Court in Shephard v. Scheeler, 96-1690, p.14 (La.10/21/97), 701 So.2d 1308, 1316, when that court reiterated its position originally stated in Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987), that deference is due to the trial court not only by virtue of the fact finder’s ability to view the demeanor of witnesses, but also because of the great deference accorded to the trial court fact finder in Louisiana’s three-tiered court system.
Contrary to the defendants’ assertion, the record amply supports the trial court’s decision. After reviewing the record as a whole we find that even if we were to apply a de novo standard of review, we would find the plaintiffs’ version of events more consistent and believable than the version by the defendants.
Accordingly, we find no manifest error in the trial court’s findings of fact.
The standard of review for general damages is as expressed in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, *6 and the requirement of an articulated basis for disturbing such awards gives little guidance as to |inwhat articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) and through Reck [v. Stevens, 373 So.2d 498 (La.1979) ] to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, at 1260. “In effect, the award must be so high or so low in proportion to the injury that it ‘shocks the conscience.’ ” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871, 879 (La.App. 5th Cir.1991). The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974); Youn, supra.
We find no abuse of the trial court’s great and vast discretion in the fixing of general damages in the instant case. There is nothing in the damage awards that shocks the conscience or would offend right reason.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. The entire report of Dr. McSwain consists of the following only:
To arrive at the below conclusion, I’ve reviewed the police report, property damage estimate and medicals of Tanzie Washington and Paulette Owens.
The police report indicates that a 1988 Chevrolet was impacted on the center and right rear by a 1989 Ford. No damage was noted to the Chevrolet. The two occupants of the vehicle claimed minor injury. The damage was indicated as light to the Ford with the one occupant claiming no injury. It is difficult to determine the energy exchange without an accident analysis report. [Emphasis added.] If in fact, there was no damage to the vehicle as indicated on the police report then one would assume that without damage there was no energy exchange. Without energy exchange, there would have been no injury produced to the occupants of either vehicle.
The report is based on the assumption that there was no energy exchange, but there was no accident analysis report upon which such a determination could be made with any accuracy. For there to be no energy exchange the report assumes no damage to the vehicles, but the report itself notes light damage to the Ford and there was testimony of light damage to the Chevrolet.